Filed 2/18/21  P. v. Mitchell CA5
See concurring & dissenting opinion

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. BRYSON CLAYTON MITCHELL, Defendant and Appellant. | F075878 (Kern Super. Ct. No. BF159352B) **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Daren Indermill, Louis M. Vasquez, Lewis A. Martinez and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE CONCURRING AND DISSENTING OPINION**

## INTRODUCTION

A jury convicted appellant Bryson Clayton Mitchell of 21 felonies, including various robberies and assaults with a semiautomatic firearm, stemming from a crime spree that occurred in a single morning. Appellant committed most of his crimes in the presence of two accomplices, who are not parties to this appeal. He received an aggregate determinate sentence of 67 years, and a consecutive aggregate indeterminate term of 144 years to life.

Appellant challenges the sufficiency of the evidence in support of most of the gang enhancements (Pen. Code, § 186.22, subd. (b)(1)),[1] which the jury found true. He also asserts that the trial court erred in permitting introduction of certain evidence. We reject these claims. However, we agree with the parties that a sentencing error occurred. An unauthorized firearm enhancement (§ 12022.5, subd. (a)) was imposed in count 18, which must be stricken. We will vacate appellant's sentence and remand this matter for resentencing.[2] We also direct the court to ensure that it states reasons for all discretionary sentencing choices. We otherwise affirm appellant's judgment.

## BACKGROUND

We summarize the material trial evidence, and we provide additional facts later in this opinion when relevant to the issues raised on appeal. Appellant went on his crime spree with Bryon Johnson and Courtney Francis (his accomplices).[3] Francis is

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

[2] Because this matter must be remanded under the full resentencing rule (*People v. Buycks* (2018) 5 Cal.5th 857, 893), appellant's challenge to the fines and fees imposed, advanced pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157, is moot and we do not consider the claim.

[3] Johnson was originally a codefendant with appellant in this matter, but their cases were severed. Francis reached a plea agreement to resolve her charges.

2.

appellant's cousin. When these events occurred, appellant and his accomplices were each members of the East Side Crips, a criminal street gang in Kern County.**4**

When committing these crimes, which primarily occurred in the very early morning hours on February 25, 2015, appellant and his accomplices used a vehicle that they had borrowed from appellant's half brother, Lynn Harris. Harris is also a member of the East Side Crips.

## I.     The Crimes Charged in Counts 1 Through 3 (the Robbery of the Restaurant)

On February 25, 2015, at about 3:06 a.m., appellant and his two accomplices entered a restaurant located in Kern County. A single employee was present. Appellant was armed with a semiautomatic firearm. Appellant and his accomplices took property belonging to both the employee and the restaurant.

## II.    The Crimes Charged in Counts 4 Through 8 (the Robbery of the Convenience Store)

About 45 minutes after the incident above, appellant and his accomplices entered a convenience store in Kern County. Two employees were present. Appellant was armed with a semiautomatic firearm. Appellant and his accomplices left with property belonging to the convenience store.

## III.   The Crimes Charged in Counts 9 Through 16 (the Home Invasion)

About 15 minutes after the incident above, appellant and his accomplices entered a residence in Kern County. Two parents and their baby were present, along with another

---

**4**     When these crimes occurred, appellant had been on parole stemming from a voluntary manslaughter (§ 192, subd. (a)) that he had committed in 2007.

adult relative.[5] Appellant was armed with a semiautomatic weapon. Appellant and his accomplices took property belonging to the family.[6]

## IV. The Crimes Charged in Counts 17 Through 18 (the Shooting)

About four hours after the incident above, appellant was outside near a market in Kern County. The market was a known hangout for gang members from the Country Boy Crips, a rival to appellant's gang. Appellant was alone, and he fired multiple shots at Terrance Wiley. Wiley is known as "T.T.," and he is a gang member in the Country Boy Crips. Nobody was injured in this shooting, but at least one of appellant's shots struck a parked vehicle that was occupied.

## V. The Forensic Evidence

Shortly after this crime spree ended, an officer on patrol happened to spot two African-American males on a public street. They matched the general description of some of the suspects from the crime spree. The officer initiated contact, and the suspects fled. One of the suspects tossed a semiautomatic firearm aside. Appellant's DNA was later discovered on this firearm.

Law enforcement recovered two spent shell casings from the scene of the shooting at the market. The two spent shell casings were identical to the ammunition that was loaded in the recovered semiautomatic firearm.[7]

---

**5** The parents had two other minor children who were outside sitting in an idling vehicle when the home invasion occurred. The parents had been loading up their vehicle for a trip out of town when appellant and his accomplices entered the residence.

**6** At one point, Francis threatened the mother that they would kidnap her baby if she did not give them property.

**7** A criminalist who tested this firearm reached inconclusive results whether this weapon fired the shots at Wiley. The firearm in question did not leave sufficient marks to make a positive identification on this discharged ammunition. The criminalist, however, could also not rule out the possibility that this weapon fired these shots.

## VI. Appellant Commits an Alleged Assault While in Jail and He Later Tries to Escape While in Custody

Law enforcement located and arrested appellant less than 24 hours after this crime spree ended. While in jail in May 2015, appellant and two other fellow East Side Crip gang members (who were neither Francis nor Johnson) assaulted a rival Country Boy Crip gang member. Appellant punched the victim, while the other East Side Crip gang members kicked the victim. The jury saw video of this assault. At trial, the prosecution's gang expert opined that appellant's participation in this assault showed his ongoing association with the East Side Crips despite being arrested.

In April 2016, appellant was still in jail custody and he was transferred to a medical center for undisclosed treatment. After being transported to the medical center, appellant ran away from the transporting deputy. Appellant was taken back into custody about five minutes later.

## VII. The Testimony of Francis

Prior to trial, Francis entered a plea deal in which she received a stipulated sentence of 20 years. Francis told that jury that, prior to the crime spree, she had been at a party with appellant and Johnson. She had consumed a lot of cocaine. She testified that, prior to the first robbery, appellant had worn a GPS ankle monitor. Appellant, however, had cut off his monitor.[8]

Francis admitted to the jury that she had committed the three charged robberies with appellant and Johnson. Francis testified that appellant had been armed with a firearm during each of the robberies at the restaurant, the convenience store and the residence.

At trial, Francis denied that she was ever a member of the East Side Crips. She admitted, however, that she had spent time with members from that gang. She admitted

---

[8] The jury learned that appellant had been on parole when this crime spree occurred. He had been wearing a GPS ankle monitor. At about 12:15 a.m. on the morning of this crime spree, he had cut off his GPS monitor and left it in a yard under some bushes at a certain residence.

5.

that both appellant and Johnson were members of the East Side Crips. Francis told the jury that the robberies were committed to get money to purchase drugs. She said the robberies were not intended to benefit or support the East Side Crips. It never crossed her mind that committing these robberies would instill fear in the community in a way to benefit the East Side Crips. She denied that either appellant or Johnson ever indicated an intent that these crimes be done to benefit the East Side Crips. Nobody flashed gang signs or shouted gang slogans during these crimes. They did not share the proceeds from these robberies with other gang members. Instead, they used the money to buy drugs for themselves. After these robberies, they never went out into the community and took credit for what they had done.

Francis told the jury that appellant was driving Harris's vehicle when they drove to the market. She and Johnson were passengers. Appellant exited the vehicle alone with the firearm. She did not know why appellant got out or why he wanted to go to the market. She denied hearing any gunshots while she waited in the vehicle.

## VIII. The Testimony of Harris

Appellant's half brother, Harris, testified at trial.[9] Harris admitted to the jury that he is an East Side Crip gang member. He also admitted that he had loaned the vehicle to appellant, which had been used in this crime spree. At the time he loaned his vehicle, Harris was high, and he believed appellant, Francis, and Johnson were also high. According to Harris, however, he had no idea that his vehicle was going to be used to commit any crimes.

After the crime spree, appellant told Harris that his vehicle had been used in various crimes. Harris testified that he went to where it had been parked on a public

---

[9]     Francis and Harris are cousins.

6.

street and he removed its license plates.[10]  Harris testified that he did so because he was afraid that he would be implicated in crimes that he did not commit.[11]

The jury learned that, during an interview with law enforcement, Harris had stated that he had removed the plates from his vehicle because appellant told him to do so.  He later told law enforcement that appellant told him to get rid of his vehicle by dumping it or burning it.

## IX.    The Convictions and Sentences

We summarize appellant's charges, convictions and his relevant sentences.  For ease of reading, and given the number of charges, we summarize this information in a spreadsheet format.[12]

The trial court found true that appellant had a prior conviction for voluntary manslaughter.  Appellant received an aggregate determinate sentence of 67 years.  A consecutive indeterminate sentence of 144 years to life was imposed.[13]

| Count | Section(s) | Offense and enhancement(s) (if any) | Verdict and finding(s) (if any) | Sentence |
|-------|-----------|-------------------------------------|---------------------------------|----------|
| 1 | 212.5(c) | Robbery in the second degree | Guilty | Upper term of 10 years; stayed |
|  | 12022.53(b) | Firearm enhancement | True | 10 years; stayed |

---

[10]    Law enforcement had this vehicle under surveillance when Harris removed the license plates from it.

[11]    The jury learned that Harris had been arrested for being an accessory to these crimes, along with gang participation.

[12]    To conserve space, we omit subdivisions in the citations for the various statutes.  The applicable subdivisions, however, are denoted for each statute by the respective parentheses.

[13]    Appellant has been sentenced in this matter three times.  The original sentencing occurred in June 2017.  On October 19, 2018, appellant was resentenced to correct certain errors that the California Department of Corrections and Rehabilitation had brought to the trial court's attention.  Finally, on October 31, 2018, the court recalled the sentence to correct a mathematical error.

7.

| Count | Section(s) | Offense and enhancement(s) (if any) | Verdict and finding(s) (if any) | Sentence |
|---|---|---|---|---|
| | 12022.53(b) & (e)(1) | Firearm enhancement | True | 10 years; stayed |
| | 186.22(b)(1) | Gang enhancement | True | |
| 2 | 245(b) | Assault with a semiautomatic firearm | Guilty | Upper term of 18 years |
| | 12022.5(a) | Firearm enhancement | True | 10 years |
| | 667(a) | Prior serious felony | True | Five years |
| | 186.22(b)(1) | Gang enhancement | True | Five years; stayed |
| 3 | 460(b) | Burglary in the second degree | Guilty | Upper term of six years; stayed |
| | 12022.5(a) | Firearm enhancement | True | 10 years; stayed |
| | 186.22(b)(1) | Gang enhancement | True | Four years; stayed |
| 4 | 212.5(c) | Robbery in the second degree | Guilty | Upper term of 10 years; stayed |
| | 12022.53(b) | Firearm enhancement | True | 10 years; stayed |
| | 12022.53(b) & (e)(1) | Firearm enhancement | True | |
| | 186.22(b)(1) | Gang enhancement | True | 10 years; stayed |
| 5 | 212.5(c) | Robbery in the second degree | Guilty | Upper term of 10 years; stayed |
| | 12022.53(b) | Firearm enhancement | True | 10 years; stayed |
| | 12022.53(b) & (e)(1) | Firearm enhancement | True | |
| | 186.22(b)(1) | Gang enhancement | True | 10 years; stayed |
| 6 | 245(b) | Assault with a semiautomatic firearm | Guilty | Consecutive one-third midterm of four years |
| | 12022.5(a) | Firearm enhancement | True | Three years four months |
| | 186.22(b)(1) | Gang enhancement | True | Five years; stayed |

| Count | Section(s) | Offense and enhancement(s) (if any) | Verdict and finding(s) (if any) | Sentence |
|---|---|---|---|---|
| 7 | 245(b) | Assault with a semiautomatic firearm | Guilty | Consecutive one-third midterm of four years |
| | 12022.5(a) | Firearm enhancement | True | Three years four months |
| | 186.22(b)(1) | Gang enhancement | True | Five years; stayed |
| 8 | 460(b) | Burglary in the second degree | Guilty | Upper term of six years; stayed |
| | 12022.5(a) | Firearm enhancement | True | 10 years; stayed |
| | 186.22(b)(1) | Gang enhancement | True | Four years; stayed |
| 9 | 213(a)(1)(A) | Robbery in the first degree | Guilty | 48 years to life |
| | 12022.53(b) | Firearm enhancement | True | |
| | 12022.53(b) & (e)(1) | Firearm enhancement | True | |
| | 186.22(b)(1) | Gang enhancement | True | |
| 10 | 213(a)(1)(A) | Robbery in the first degree | Guilty | Consecutive 48 years to life |
| | 12022.53(b) | Firearm enhancement | True | |
| | 12022.53(b) & (e)(1) | Firearm enhancement | True | |
| | 186.22(b)(1) | Gang enhancement | True | |
| 11 | 213(a)(1)(A) | Robbery in the first degree | Guilty | Consecutive 48 years to life |
| | 12022.53(b) | Firearm enhancement | True | |
| | 12022.53(b) & (e)(1) | Firearm enhancement | True | |
| | 186.22(b) | Gang enhancement | True | |
| 12 | 245(b) | Assault with a semiautomatic firearm | Guilty | Upper term of 18 years; stayed |
| | 12022.5(a) | Firearm enhancement | True | 10 years; stayed |

| Count | Section(s) | Offense and enhancement(s) (if any) | Verdict and finding(s) (if any) | Sentence |
|---|---|---|---|---|
| | 186.22(b)(1) | Gang enhancement | True | Five years; stayed |
| 13 | 245(b) | Assault with a semiautomatic firearm | Guilty | Upper term of 18 years; stayed |
| | 12022.5(a) | Firearm enhancement | True | 10 years; stayed |
| | 186.22(b)(1) | Gang enhancement | True | Five years; stayed |
| 14 | 245(b) | Assault with a semiautomatic firearm | Guilty | Upper term of 18 years; stayed |
| | 12022.5(a) | Firearm enhancement | True | 10 years; stayed |
| | 186.22(b)(1) | Gang enhancement | True | Five years; stayed |
| 15 | 245(b) | Assault with a semiautomatic firearm | Guilty | Consecutive one-third midterm of four years |
| | 12022.5(a) | Firearm enhancement | True | Three years four months |
| | 186.22(b)(1) | Gang enhancement | True | Five years; stayed |
| 16 | 460(a) | Burglary in the first degree | Guilty | Upper term of eight years; stayed |
| | 12022.5(a) | Firearm enhancement | True | 10 years; stayed |
| | 186.22(b)(1) | Gang enhancement | True | 10 years; stayed |
| 17 | 245(b) | Assault with a semiautomatic firearm | Guilty | Consecutive one-third midterm of four years |
| | 12022.5(a) | Firearm enhancement | True | Three years four months |
| | 186.22(b)(1) | Gang enhancement | True | Five years; stayed |
| 18 | 246 | Shooting at an occupied motor vehicle | Not guilty | |
| | 246.3(a) | Lesser included offense of grossly negligent discharge of a firearm | Guilty | Consecutive one-third midterm of one year, four months |

| Count | Section(s) | Offense and enhancement(s) (if any) | Verdict and finding(s) (if any) | Sentence |
|---|---|---|---|---|
| | 12022.5(a) | Firearm enhancement | True | Three years four months |
| | 186.22(b)(1) | Gang enhancement | True | Five years; stayed |
| 19 | 29800(a)(1) | Felon in possession of a firearm | Guilty | Upper term of six years; stayed |
| 20 | 25850(c)(3) | Active criminal street gang member carrying a loaded firearm | Guilty | Upper term of six years; stayed |
| 21 | 186.22(a) | Participating in a criminal street gang | Guilty | Upper term of six years; stayed |

## DISCUSSION

### I. Substantial Evidence Supports the Gang Enhancements the Jury Found True in Counts 1 Through 16

Appellant concedes that his shooting at Wiley, a rival gang member (counts 17 & 18), was gang related. However, appellant argues that insufficient evidence supports the gang enhancements found true in counts 1 through 16. These counts involved the three robberies. He contends that the jury's true findings for the gang enhancements in counts 1 through 16 must be reversed.

#### A. *Standard of Review*

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence." (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60 (*Albillar*).)

#### B. *Analysis*

There are two prongs to the gang enhancement under section 186.22, subdivision (b)(1). (*Albillar*, *supra*, 51 Cal.4th at p. 59.) The first prong requires that the

11.

underlying felony be "'gang related.'" (*People v. Weddington* (2016) 246 Cal.App.4th 468, 484 (*Weddington*).)  The second prong requires a defendant to commit a gang-related felony with the specific intent to promote, further, or assist in any criminal conduct by gang members.  (*Ibid.*)  Our Supreme Court recognizes that "[n]ot every crime committed by gang members is related to a gang."  (*Albillar*, *supra*, at p. 60.)

Section 186.22, subdivision (b)(1), provides three alternatives for establishing the first prong.  The offense must be committed (1) "for the benefit" of a gang; or (2) "at the direction" of a gang; or (3) "in association" with a gang.  (*Albillar*, *supra*, 51 Cal.4th at p. 59.)  Because the language from the statute is worded in the disjunctive, a gang enhancement may be imposed without evidence of any benefit to the gang so long as the crime was committed in association with or at the direction of another gang member.  (*People v. Leon* (2008) 161 Cal.App.4th 149, 162; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 (*Morales*).)  Thus, the first prong may be established with substantial evidence that two or more gang members committed the crime together, unless there is evidence that they were "on a frolic and detour unrelated to the gang."  (*Morales*, *supra*, at p. 1198; see *Albillar*, *supra*, 51 Cal.4th at pp. 61–62.)

In the present matter, appellant asserts that the evidence was insufficient to support the gang enhancement's first prong.  According to appellant, this court need not analyze the second prong.  He argues that neither he nor his accomplices did anything during these crimes to alert the victims that they were gang members.  There was also no evidence that any gang took credit for these crimes, or that other East Side Crip gang members shared in the proceeds.  He contends that more than mere gang membership is required to establish that a crime is gang related, and he contends that more is required than gang members simply working together.

Appellant also emphasizes Francis's testimony. She testified that these robberies were not done to support or benefit the East Side Crips.[14] According to Francis, the robberies were committed to obtain money for personal reasons. After the robberies, she, appellant and Johnson shared the money and they bought drugs. That money was not provided to other gang members.

Finally, appellant raises numerous concerns regarding the sufficiency of the opinions that the prosecution's gang expert rendered. For instance, the gang expert agreed that, because Francis eventually testified and identified the other participants in these crimes, she faced possible assaults or even death because she broke the "code of silence that the East Side Crips have with one another." Appellant argues that, because Francis testified against him, any alleged "code of silence" did not exist.[15] Appellant maintains that the "gang expert's discussion of the code of silence was contrary to the evidence." He also claims that an "effective code of silence" is "almost a condition precedent" necessary to establish that these robberies were gang related. Likewise, appellant contends that other portions of the expert's opinions were not based on the facts, and the gang expert's opinions "would make any robbery committed by gang members a gang crime." Appellant notes that the prosecution's gang expert was never presented with a hypothetical regarding whether the robberies of the restaurant and/or the residence were gang related. Appellant asserts that the expert's failure to opine about these robberies "should establish by itself" that they were not gang related.

We reject appellant's numerous arguments. Three opinions are instructive.

---

**14** At trial, Francis denied that she was ever a member of the East Side Crips. She admitted, however, that she spent "[a] lot" of time with members of that gang. She admitted that appellant and Johnson were members of that gang.

**15** The jury learned that when Francis spoke with law enforcement, she admitted that people in jail had been telling her that she might be killed in prison for having a "snitch jacket."

13.

### 1. Albillar

Both parties cite and rely upon *Albillar*, *supra*, 51 Cal.4th 47. In *Albillar*, three gang members raped a minor. The victim knew that at least two of her assailants were gang members. (*Id.* at pp. 51–53.) After the rape, the victim was reluctant to come forward over fear of retaliation. A girlfriend of a member of the defendants' same gang contacted the victim and warned her that she and her family could be hurt if they told the police. (*Id.* at p. 53.)

The Supreme Court held that substantial evidence supported the jury's true finding regarding a gang enhancement under section 186.22, subdivision (b)(1). (*Albillar*, *supra*, 51 Cal.4th at p. 51.) The prosecution's gang expert had testified about gang culture, and the benefit of gang members committing crimes together. (*Id.* at pp. 60–61.) Our high court concluded that the defendants had "actively assisted each other in committing these crimes," and their common gang membership "ensured that they could rely on each other's cooperation in committing these crimes and that they would benefit from committing them together. They relied on the gang's internal code to ensure that none of them would cooperate with the police, and on the gang's reputation to ensure that the victim did not contact the police." (*Id.* at p. 62.) Our high court found substantial evidence that the defendants "came together *as gang members* to attack" the victim, "and, thus, that they committed these crimes in association with the gang." (*Ibid.*)[16]

### 2. Weddington

Respondent cites and relies upon *Weddington*, *supra*, 246 Cal.App.4th 468. In *Weddington*, the appellate court affirmed a finding that three accomplices committed a burglary and attempted burglaries as gang members "acting in association" with each other. (*Id.* at pp. 484–485.) The burglary and attempted burglaries were a "signature

---

[16] The *Albillar* court also analyzed whether the three defendants had acted in a manner that benefited their gang. The high court concluded that they had done so. (*Albillar*, *supra*, 51 Cal.4th at pp. 63–64.) We omit that portion of the analysis, which is irrelevant to the issues that appellant raises in this appeal.

14.

crime" of the accomplices' gang. Nothing suggested that the crimes "constituted a 'frolic and detour' distinct and independent of the criminal activities of the gang." (*Id.* at p. 485.)

### 3.    Morales

In *Morales*, *supra*, 112 Cal.App.4th 1176, the defendant entered a home to deliver methamphetamine. He was with two other gang members. Once inside, the defendant robbed his customer at gunpoint. The other two gang members robbed two other men in the home and shot and killed one of the victims when he resisted. The defendant admitted that he entered the home in order to sell methamphetamine to one of the occupants, and that he asked the other men to accompany him. He denied robbing his drug customer, however, and claimed to have been surprised by the actions of his companions in robbing and shooting the other occupants while he was in another room. (*Id.* at pp. 1182–1183.) The prosecution's expert opined, in answer to a hypothetical question, that given the facts of the defendant's case (i.e., a robbery and murder carried out by several gang members acting in concert), the crime would have been committed for the benefit of, or at the direction of, or in association with, the gang. (*Id.* at pp. 1179–1182.) The appellate court concluded that there was substantial evidence to support the first element of the gang enhancement, because "the jury could reasonably infer the requisite association from the very fact that [the] defendant committed the charged crimes in association with fellow gang members." (*Id.* at p. 1198.)

### 4.    The Facts from this Matter

Appellant notes that the *Albillar* court looked at numerous factors – such as how the offense was committed, the gang expert's opinions, the victim's fear of retaliation, and how the gang attempted to dissuade her from cooperating with authorities – in finding substantial evidence that the rape was done in association with a criminal street gang. In contrast to *Albillar*, no evidence shows that anyone tried to dissuade the victims from coming forward when appellant and his accomplices committed the robberies.

15.

Appellant contends that "a defendant who has not used his gang status to prevent or at least try to prevent the victim from calling police has in effect communicated this is not a gang crime."

We disagree with appellant's various arguments. This record overwhelmingly establishes that substantial evidence supports the gang enhancements in counts 1 through 16.

The prosecution's gang expert informed the jury that robbery, assault with a deadly weapon, and burglary (among other crimes) are all "primary activities" of the East Side Crips. The expert explained that when East Side Crip gang members commit robberies together, it increases the success rate and there is "strength in numbers." According to the expert, the East Side Crips benefit when their members work together and commit robberies. This is one way the gang obtains money, and it increases its reputation for violence.

Based on a "scenario" presented by the prosecutor, the expert opined that the robbery of a convenience store with a division of labor among gang members would be considered committed in "association" with East Side Crips. The gang members all benefited, and they were "all working in conjunction with one another to accomplish a bigger goal."[17] The expert opined that, even if gang members want to buy drugs for personal reasons, if they come together and commit crimes to obtain money to buy drugs, those crimes are committed in association with the gang. The expert explained that, even if they are using the money "for selfish reasons," recruiting other gang members to commit the crimes with "specific roles" shows a gang association.

---

[17] During cross-examination, the prosecution's gang expert agreed that sometimes gang members commit robberies for their own gain and not specifically for the gang. During redirect examination, the expert agreed that, if gang members commit robberies together and they use the money for drugs, those actions benefit the gang because drugs and parties continue the gang lifestyle.

16.

Like *Albillar*, *Weddington* and *Morales*, the facts overwhelmingly support a conclusion that appellant and his accomplices came together as gang members. Prior to his crime spree, appellant borrowed a vehicle from a member of his gang. Prior to committing these crimes, appellant cut off his GPS ankle monitor. He then committed these robberies with two other members from his gang while using the borrowed vehicle. After this crime spree ended, appellant alerted the first gang member that crimes had been committed with the vehicle, and appellant alternatively advised the other gang member to dump or burn the vehicle or take off its license plates. That gang member removed the license plates in an effort to thwart law enforcement's investigation. Based on this evidence, it is reasonable to infer that appellant and his accomplices relied on their common gang membership and the apparatus of the gang to complete these robberies.

Francis's testimony does not alter our conclusion. Although she stated that the robberies were committed only for personal gain, we will not disturb the jury's true findings. While appellant may have had a personal motive for robbing the various victims, the jury could have also reasonably concluded that the elements of the gang enhancements were established beyond a reasonable doubt. Reversal is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. We will neither reweigh the evidence nor reevaluate a witness's credibility. (*Albillar*, *supra*, 51 Cal.4th at p. 60.) Indeed, robberies, burglaries and assaults with firearms are typical offenses committed by the East Side Crips. Nothing reasonably suggests that these robberies were either a frolic or a detour distinct and independent of the criminal activities of the gang. (See *Weddington*, *supra*, 246 Cal.App.4th at p. 485.)

Finally, we need not fully respond to appellant's numerous arguments regarding the sufficiency of the gang expert's testimony. Instead, the jury was instructed on the required elements to find true the gang enhancements. Appellant's criminal conduct in concert with fellow gang members, and while using another fellow gang member's vehicle, amply demonstrated that the gang enhancements were proper. The prosecution

17.

conclusively established that the robberies charged in counts 1 through 16 were gang related under section 186.22, subdivision (b)(1).[18]  (See *Albillar*, *supra*, 51 Cal.4th at p. 62; *Weddington*, *supra*, 246 Cal.App.4th at pp. 484–485; *Morales*, *supra*, 112 Cal.App.4th at p. 1198.)

Based on this record, the gang enhancements in counts 1 through 16 are supported by evidence that is reasonable, credible, and of solid value.  A reasonable jury could have found these enhancements true beyond a reasonable doubt.  Consequently, substantial evidence supports the jury's true findings.  Accordingly, appellant's arguments are without merit, and this claim fails.

## II.     The Trial Court Did Not Abuse its Discretion in Permitting Introduction of Appellant's Manslaughter Conviction as a Predicate Offense, and Any Presumed Error was Harmless

At trial, the prosecution introduced evidence regarding six predicate offenses that had been committed by various members of the East Side Crips.[19]  Appellant contends that error occurred regarding admission of two of these offenses.

One of the disputed predicate offenses involved appellant's conviction for voluntary manslaughter.  No facts were introduced at trial regarding how or why this homicide occurred.  Instead, the jury was told that this took place in 2007, and appellant was convicted in 2008 following a plea agreement.  Appellant received a six-year prison sentence.

The other disputed predicate offense occurred in 2009 (the Colen predicate offense).  It involved an East Side Crip gang member (Colen) and another East Side Crip gang member robbing a victim at gunpoint.

---

[18]     Because the "in association" element is satisfied, we need not respond to appellant's arguments regarding whether the robberies were done to benefit appellant's gang.

[19]     These six predicate offenses established a "'pattern of criminal gang activity'" for the East Side Crips.  (See § 186.22, subd. (e).)

Appellant contends that the trial court abused its discretion and violated Evidence Code section 352 when permitting admission of these two predicate offenses. He seeks reversal of the jury's true findings on the gang enhancements in counts 1 through 16.

## A.    *Standard of Review*

An abuse of discretion standard is used to review a trial court's evidentiary rulings. A trial court abuses its discretion when its ruling is outside the bounds of reason. (*People v. Waidla* (2000) 22 Cal.4th 690, 714.) We will not disturb the trial court's decision on appeal unless it exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125; see *People v. Williams* (1998) 17 Cal.4th 148, 162 [abuse of discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)

## B.    *Analysis*

Appellant asserts that the trial court abused its discretion in two ways. First, appellant contends the court should have excluded the Colen predicate offense. Unlike the other five predicate offenses (including appellant's manslaughter conviction), the Colen predicate offense was not established with certified records. Instead, the prosecution's gang expert briefly summarized the facts surrounding that robbery. Appellant maintains that the Colen predicate offense violated *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*) because the gang expert related case-specific facts about this crime, and this predicate offense was not independently proven with competent evidence.[20]

---

[20]    There is a split of authority in California regarding whether a gang expert's testimony about predicate offenses entails case-specific facts as contemplated by *Sanchez, supra*, 63 Cal.4th 665. One view holds that facts related to predicate offenses are case specific. (*People v. Lara* (2017) 9 Cal.App.5th 296, 337; *People v. Ochoa* (2017) 7 Cal.App.5th 575, 583, 588–589.) The other view is that evidence of a gang's pattern of criminal activities by alleged members is only "general background information," permitting a qualified expert to relate hearsay while testifying about predicate offenses. (*People v. Blessett* (2018) 22 Cal.App.5th 903, 943–945,

19.

Second, appellant argues that, if the Colen predicate offense was inadmissible, then appellant's manslaughter conviction washed out because it did not occur within three years of another predicate offense.[21]  Appellant also contends that, even if his manslaughter conviction nevertheless qualified as a predicate offense, its admission was more prejudicial than probative, and it should have been excluded.

In contrast, respondent asserts that appellant has forfeited this claim.  In any event, respondent claims that appellant's manslaughter conviction was admissible because it did not wash out as a predicate offense, and appellant's manslaughter conviction did not violate Evidence Code section 352.  Moreover, respondent contends that appellant cannot establish ineffective assistance of counsel.  Finally, respondent argues that, even if erroneously admitted, any error was harmless.

We agree with respondent that, even if the Colen predicate offense was improperly admitted (an issue we do not analyze), appellant's manslaughter conviction did not wash out as a predicate offense.  Moreover, the court did not abuse its discretion in permitting its introduction.  Finally, even if evidentiary error occurred, prejudice did not result.[22]

### 1. Even if the Colen predicate offense was improperly admitted in violation of *Sanchez*, appellant's manslaughter conviction did not wash out as a predicate offense

A "'pattern of criminal gang activity'" for a criminal street gang is established with the introduction of two or more enumerated offenses.  (§ 186.22, subd. (e).)  These predicate offenses must fall within a certain time range.  At least one predicate offense must have occurred after 1988 (i.e., the effective date of the statute).  The last of the

---

review granted Aug. 8, 2018, S249250, overruled on other grounds in *People v. Perez* (2020) 9 Cal.5th 1, 14; *People v. Vega-Robles* (2017) 9 Cal.App.5th 382, 411.)

[21]  The remaining four predicate offenses that were introduced at trial occurred nearer in time to the crimes charged in this matter.  If the Colen predicate offense is excluded, the nearest other predicate offense to appellant's manslaughter conviction occurred in 2012.

[22]  Because this claim fails on its merits and any presumed evidentiary error was harmless, we need not address forfeiture or ineffective assistance of counsel.

predicate offenses must have occurred within three years after a prior offense. Finally, the predicate offenses must have been committed on separate occasions, or by two or more persons. (*Ibid.*) There is no requirement that all of the predicate offenses must occur within three years of the charged crime. (*People v. Fiu* (2008) 165 Cal.App.4th 360, 388.)

Appellant argues that, assuming the Colen predicate offense was improperly admitted, then a gap of more than three years occurred between his manslaughter conviction and the next predicate offense. According to appellant, the oldest predicate offense must occur within three years of another offense.[23] As such, he contends that his manslaughter conviction washed out and the trial court abused its discretion in permitting its introduction as a predicate offense.

We disagree with appellant's reading of the statute. Section 186.22, subdivision (e), does not have an express requirement that all predicate offenses must occur within three years of a prior one. Instead, section 186.22 requires that "the last" predicate offense must occur "within three years after a prior offense," and the offenses must be "committed on separate occasions, or by two or more persons." (§ 186.22, subd. (e).)

We agree with respondent that "the last" offense refers to the most recent, rather than the oldest, offense. Moreover, the statute does not provide a wash out provision. Thus, appellant's manslaughter conviction did not wash out or become statutorily ineligible as a predicate offense even if the Colen predicate offense was inadmissible under *Sanchez* (an issue we do not address).

---

[23] Appellant's arguments are based, in part, on a comment that the prosecutor made in his written motion in limine regarding this issue. The prosecutor had cautioned the trial court that it was "safest" to use predicate offenses "that not only fall within three years of each other, but of the charged offense as well."

In the alternative, appellant asserts that, even if his reading of the statute is incorrect, then the last predicate offense (that occurred in 2014), was still not within three years of his 2007 voluntary manslaughter.  Appellant contends that his manslaughter conviction still would not have satisfied the requirements of section 186.22, subdivision (e).

We reject this alternative argument.  The last predicate offense admitted against appellant occurred in 2014.  The next two predicate offenses also occurred in 2014.  The fourth predicate offense occurred in 2012.  The Colen predicate offense occurred in 2009, and appellant's manslaughter conviction occurred in 2007.  As such, "the last" predicate offense did occur "within three years after a prior offense," and the offenses were "committed on separate occasions, or by two or more persons."  (§ 186.22, subd. (e).)  There is no requirement that all of the predicate offenses must occur within three years of the charged crime.  (*People v. Fiu*, *supra*, 165 Cal.App.4th at p. 388.)

Finally, appellant concedes in his reply brief that section 186.22, subdivision (e), does not impose a three-year limitation on any offense except for the most recent.  He asserts, however, that this "is a significant omission in the statute."  He argues that, based on the statute's purpose to establish a pattern of criminal gang activity, then it should be required that all predicate crimes must occur within three years of a prior predicate offense to establish a pattern.

We need not comment further on appellant's argument.  Our task is to give plain meaning to the express words of a statute.  (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.)  When the words of a statute are clear, as they are here, we may not alter them to accomplish a different purpose.  (*Ibid*.)  Consequently, appellant's various arguments regarding the timing under the statute are without merit.

## 2. The trial court did not abuse its discretion in permitting introduction of appellant's manslaughter conviction as a predicate offense

Appellant concedes that a defendant's own prior criminal conviction can be used as a predicate offense to establish that a gang has engaged in a pattern of criminal activity. (*People v. Tran* (2011) 51 Cal.4th 1040, 1046.) The admissibility of such evidence, however, is still controlled by Evidence Code section 352,[24] and its probative value must not be substantially outweighed by its prejudicial effect. (*Tran*, *supra*, at p. 1047.)

Appellant argues that, even if his manslaughter conviction did not wash out, the trial court nevertheless abused its discretion in permitting its introduction. He contends that any probative value was substantially outweighed by its prejudicial effect. He asserts that, because it involved a homicide, his manslaughter conviction was "much more serious than the charged crimes and inflamed the jurors' emotions and posed an intolerable risk to the fairness of the proceedings or the reliability of the outcome." Appellant also notes that the prosecution introduced four other predicate offenses, further increasing the prejudicial effect of his manslaughter conviction.

Appellant's arguments are without merit. As an initial matter, the manslaughter conviction was relevant as a predicate offense to establish, in part, a "'pattern of criminal gang activity'" for appellant's gang as required under section 186.22, subdivision (e). As such, this evidence tended to prove disputed facts that were of consequence in this trial. (Evid. Code, § 210.) Thus, this evidence had probative value.[25]

---

[24] "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

[25] We note that appellant's manslaughter conviction was alleged in count 19 as the prior felony supporting the charge that appellant had been in possession of a firearm as a convicted felon (§ 29800, subd. (a)(1)). Based on the probation report, it appears that the manslaughter conviction was appellant's only prior felony.

The prejudicial impact of this evidence did not substantially outweigh its probative value. When arguing about this issue before the trial court, the prosecutor offered to reduce any unnecessary prejudicial impact by not introducing any facts regarding the circumstances surrounding the homicide. Instead, the jury would only learn that the crime happened on a particular date, appellant was convicted, and he had served a prison sentence for it. At trial, only certain certified documents, including an abstract of judgment, were moved into evidence regarding appellant's manslaughter conviction. The prosecutor reviewed those documents with his gang expert. At no time in reviewing these documents did the expert inform the jury about the circumstances surrounding appellant's manslaughter, how it occurred, or the identity of the victim.

Testimony about appellant's manslaughter conviction was very short in duration, covering only about five pages in the reporter's transcript. It cannot be said that this necessitated an undue consumption of time. In addition, the jury learned no details about the circumstances surrounding this homicide. As such, this evidence neither reasonably created a substantial danger of undue prejudice, confused the issues, nor may have misled the jury. (Evid. Code, § 352.) We reject appellant's assertion that this evidence may have inflamed the jurors' emotions against him.

Based on this record, the trial court's evidentiary ruling was not arbitrary, capricious, or patently absurd. The admission of this evidence did not pose an intolerable risk to the fairness of the proceedings, and it did not call into question the reliability of the outcome. Therefore, an abuse of discretion is not present, and this claim fails. In any event, even if error occurred, it was harmless.

### 3. Any presumed evidentiary error was harmless

Appellant asserts that, had the jury not been told about his manslaughter conviction, it could have concluded he was not "such a hardened gang member." According to appellant, the jury could have determined that he committed the robberies "for personal reasons." He argues that, either under the federal standard of *Chapman v.*

24.

*California* (1967) 386 U.S. 18 (*Chapman*) or the state standard of *People v. Watson* (1956) 46 Cal.2d 818, reversal of his gang enhancements in counts 1 through 16 is warranted.

We reject appellant's assertions. As an initial matter, the appropriate standard of review is under *Watson* and not *Chapman*. Absent fundamental unfairness, the *Watson* standard is used to analyze the prejudicial impact of evidentiary error. (*People v. Partida* (2005) 37 Cal.4th 428, 439.) We "must ask whether it is reasonably probable the verdict would have been more favorable to the defendant absent the error." (*Ibid.*)

The prosecution established with overwhelming evidence that the East Side Crips had a pattern of criminal gang activity. This is true even when setting aside the two disputed predicate offenses. In addition, the evidence conclusively demonstrated appellant's ongoing gang involvement. Moreover, substantial evidence supports the jury's true findings in counts 1 through 16 regarding the gang enhancements.

The jury heard very little testimony about appellant's manslaughter conviction, and they received no facts surrounding how or why it occurred. Even if the court erred in permitting admission of appellant's manslaughter conviction (and the Colen predicate offense) there is no reasonable probability appellant would have received a more favorable result. The evidence against appellant was overwhelming. It is not reasonably probable the jury would have found the gang enhancements not true. Consequently, we can declare that any assumed evidentiary error was harmless. Accordingly, appellant's numerous arguments are without merit and this claim fails.

## III.  The Trial Court Did Not Abuse Its Discretion in Permitting Introduction of Appellant's Jail Assault, and Any Presumed Error was Harmless

While in jail after being arrested in this matter, appellant and two other East Side Crips gang members assaulted a rival Country Boy Crips gang member. The prosecution's gang expert explained to the jury that appellant's participation in this

assault showed his continuing association with the East Side Crips even though he had been arrested.

Appellant asserts that the trial court erred in allowing the prosecutor to introduce evidence about this assault. He contends the error was prejudicial, requiring reversal of the jury's true findings for the gang enhancements in counts 1 through 16.

## A. *Standard of Review*

An abuse of discretion standard is used to review the admission of gang evidence over an Evidence Code section 352 objection. (*People v. Montes* (2014) 58 Cal.4th 809, 859–860.) Under this standard, we will not disturb the trial court's decision on appeal unless it exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Rodrigues*, *supra*, 8 Cal.4th at pp. 1124–1125; see *People v. Williams*, *supra*, 17 Cal.4th at p. 162 [abuse of discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)

## B. *Analysis*

Appellant argues that his alleged jail assault was cumulative evidence in his trial. He concedes he was a gang member in the East Side Crips, and he also states it is undisputed that the Country Boy Crips and East Side Crips are rivals. He contends that his jail assault was admitted to cast him as a "homicidal gang criminal." He maintains that this evidence inflamed the jurors' emotions, and he claims he suffered prejudice under either *Watson* or *Chapman*.

Appellant's various assertions are without merit. The trial court did not abuse its discretion in permitting admission of this evidence. In any event, any presumed error was harmless.[26]

---

[26] Respondent contends that appellant has forfeited his argument that this evidence was cumulative of other gang evidence. Appellant counters that his trial counsel did enough to preserve this issue for appeal and, in any event, this court should reach the merits of this claim.

## 1. The trial court did not abuse its discretion

In general, the prosecution is entitled to introduce evidence of gang affiliation and activity when such evidence is relevant to prove some fact other than the defendant's disposition to commit the charged crimes. (*People v. McKinnon* (2011) 52 Cal.4th 610, 655–656.) Gang evidence is admissible to prove motive or identity if the prejudicial effect does not outweigh its probative value. (*Id.* at p. 655.) Gang evidence is relevant and admissible when the motive for the underlying crime was gang related. (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167.)

In this matter, the prosecutor argued to that trial court that appellant had engaged in a series of crimes with Johnson and Francis. Their crime spree ended with appellant shooting at a rival gang member. The prosecutor contended that appellant's jail assault was highly probative of his continued devotion to the East Side Crips, even when he was in custody. According to the prosecutor, this evidence further established appellant's motive for the shooting. When ruling on the admissibility of this evidence, the court found it highly probative, noting that its prejudicial effect did not substantially outweigh its probative value.

We agree with respondent that the trial court did not abuse its discretion. Evidence about appellant's alleged jail assault was relevant to establish his gang-related motive to fire at Wiley, a rival Country Boy Crip. The alleged jail assault also showed appellant's ongoing association with the East Side Crips. This evidence tended to prove disputed facts that were of consequence in this trial. (Evid. Code, § 210.) Thus, this evidence had probative value.

Moreover, the prejudicial impact of this evidence did not substantially outweigh its probative value. Testimony about the jail assault was relatively short in duration. It cannot be said that this evidence necessitated an undue consumption of time. In addition,

---

We need not resolve the forfeiture issue. Instead, appellant's claim fails on its merits and any presumed error was harmless.

the circumstances surrounding the alleged assault were not inflammatory, especially when compared to the facts underlying the numerous crimes charged against appellant in this matter. Evidence about the alleged jail assault did not create a substantial danger of undue prejudice, confuse the issues, or possibly mislead the jury. (Evid. Code, § 352.)

Based on this record, the trial court's evidentiary ruling was not arbitrary, capricious, or patently absurd. The admission of this evidence did not pose an intolerable risk to the fairness of the proceedings, and it did not call into question the reliability of the outcome. Therefore, an abuse of discretion is not present, and this claim fails. In any event, even if error occurred, it was harmless.

### 2.     Any presumed error was harmless

The jury was instructed that the prosecution had the burden of proving beyond a reasonable doubt that the alleged gang enhancements were true. If reasonable doubt existed, the jury was instructed to find these allegations "not true."

The trial court instructed the jury that evidence had been introduced for the purpose of showing criminal street gang activities and of criminal acts by gang members other than the crimes charged against appellant. The jury was told that this evidence could not be used to determine if appellant was a person of bad character or had a disposition to commit crimes. Instead, the jury could only consider this for the limited purpose of determining if it tended to show that the charged crimes were committed for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist in any criminal conduct by gang members. The jury was told to not consider this evidence for any other purpose.

We presume that the jury followed the limiting instructions, and there is nothing in this record to rebut that presumption. (*People v. Waidla*, *supra*, 22 Cal.4th at p. 725.) Moreover, the trial evidence overwhelmingly established the gang enhancements. Even if the court erred in permitting admission of evidence regarding appellant's alleged jail assault, there is no reasonable probability he would have received a more favorable

28.

result. It is not reasonably probable the jury would have found any of the gang enhancements not true.[27] Thus, any assumed evidentiary error was harmless. Therefore, appellant's arguments are without merit and this claim fails.

**IV. The Firearm Enhancement in Count 18 Must Be Stricken and Appellant Resentenced**

The parties agree that an unauthorized sentence occurred. The firearm enhancement under section 12022.5, subdivision (a), in count 18 must be stricken. In that count, appellant was convicted of grossly negligent discharge of a firearm under section 246.3, subdivision (a). Because the use of a firearm was an element for that substantive offense, the firearm enhancement is unauthorized. (§ 12022.5, subd. (a); *People v. Overman* (2005) 126 Cal.App.4th 1344, 1361.)

Respondent asserts that this court may correct this sentencing error. According to respondent, we should impose sentence on the gang enhancement that was stayed in count 18 and order the abstract of judgment corrected. We decline to do so. A full resentencing is appropriate when part of a sentence is stricken on review. This permits the trial court to exercise its sentencing discretion in light of the changed circumstances. (*People v. Buycks*, *supra*, 5 Cal.5th at p. 893; *People v. Gastelum* (2020) 45 Cal.App.5th 757, 772 ["In general, when an error affects part of a sentence, we must remand for a full resentencing on all counts and allegations"].)

Accordingly, we vacate appellant's sentence, and remand this matter for resentencing.

---

**27** We reject appellant's suggestion that *Chapman* provides the appropriate standard of review in this situation. Instead, this is an issue of alleged evidentiary error under state law, and *Watson* provides the appropriate standard. (*People v. Partida*, *supra*, 37 Cal.4th at p. 439.)

29.

**V.** **If the Trial Court Again Imposes Consecutive Sentences, It Shall Articulate Whether They are Mandatory or Discretionary, and It Shall State Reasons Supporting Its Discretionary Sentencing Choices**

In a series of arguments, appellant contends that the trial court abused its discretion when imposing consecutive sentences in some of his counts. He asserts that it is unclear whether the court understood it could sentence him concurrently in counts 9, 10 and 11 (the three robberies related to the home invasion), in counts 6, 7, 15 and 17 (various assaults with a semiautomatic firearm), and in count 18 (shooting at an occupied motor vehicle). He argues that the court misapplied the law.

The parties dispute numerous issues. They disagree whether appellant's sentencing claims have been forfeited, whether ineffective assistance of counsel occurred, whether the court applied the correct sentencing standards, whether the record supports the court's sentencing choices, and whether this matter must be remanded for resentencing.

We need not fully respond to all of the parties' disputed points regarding these alleged sentencing errors. Instead, we have already determined that appellant's sentence must be vacated, and this matter remanded for resentencing stemming from an unrelated error. A full resentencing is appropriate because part of appellant's sentence was stricken on review. (*People v. Buycks*, *supra*, 5 Cal.5th at p. 893; *People v. Gastelum*, *supra*, 45 Cal.App.5th at p. 772.)

When previously sentenced in this matter, appellant fell under the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) because he had a prior serious felony conviction that was found true. When sentencing appellant, the trial court adopted the justifications set forth in the probation report. The court gave no reasons for the consecutive sentences it imposed in counts 9, 10 and 11.[28] For counts 6, 7, 15, 17, and

---

[28] The probation report recommended that appellant should receive consecutive terms in counts 9, 10 and 11 (the three robberies related to the home invasion). According to the probation report, these crimes involved "separate victims and separate acts of violence or threats of violence to the victims." The probation report also recommended consecutive sentences in

18, however, the court did state that these crimes and objectives were predominantly independent of each other, and these crimes involved separate acts of violence or threats of violence.

When appellant is resentenced, and if the trial court again imposes consecutive sentences, the court shall clarify whether any imposed consecutive sentences are mandatory or discretionary. Under the Three Strikes law, if multiple second or third strike crimes did *not* occur on the same occasion or out of the same operative facts, the defendant *must* receive consecutive sentences. (*People v. Deloza* (1998) 18 Cal.4th 585, 591.) In contrast, if multiple second or third strike crimes *did* occur on the same occasion or arose from the same set of operative facts, a trial court retains discretion to impose either concurrent or consecutive sentences. (*People v. Danowski* (1999) 74 Cal.App.4th 815, 821.)[29]

Further, the court must state reasons in support of any discretionary consecutive sentence it imposes. (§ 1170, subd. (c); Cal. Rules of Court, rule 4.406(a) & (b)(5).) A court may not merely incorporate by reference justification from a probation report supporting a discretionary sentencing choice. Such a practice renders meaningless any appellate review regarding the imposed sentence and the sentencing court's reasons for it. (*People v. Fernandez* (1990) 226 Cal.App.3d 669, 681.)[30]

counts 6, 7, 15 and 17 (various assaults with a semiautomatic firearm), and in count 18 (shooting at an occupied motor vehicle). According to the probation report, these crimes and objectives were predominantly independent of each other, and these crimes involved separate acts of violence or threats of violence. At no point, however, did the probation report mention or discuss sentencing under the Three Strikes law.

[29] In counts 9, 10 and 11 (the three robberies related to the home invasion), appellant received indeterminate sentences because of section 186.22, subdivision (b)(4)(B). A trial court has discretion to impose concurrent sentences for multiple convictions under section 186.22, subdivision (b)(4)(B). (*People v. Leon* (2016) 243 Cal.App.4th 1003, 1026.)

[30] Respondent notes that the probation report did not state that consecutive sentences were mandatory in counts 9, 10 and 11. Instead, the probation report "recommended" that consecutive sentences be imposed in those counts. Further, the trial court never stated that it believed consecutive sentences were mandatory. Although the totality of the sentencing record strongly

We direct the trial court to comply with these requirements when appellant is resentenced.  We express no opinion regarding how the court should sentence him.

## **DISPOSITION**

Appellant's sentence is vacated, and this matter is remanded for resentencing.  The trial court shall strike the firearm enhancement (§ 12022.5, subd. (a)) found true in count 18.  When appellant is resentenced, and if the court again imposes consecutive sentences, the court shall clarify whether any consecutive sentences are mandatory or discretionary.  The court shall state its reasons in support of all of its discretionary sentencing choices, including the imposition of discretionary consecutive sentences. (§ 1170, subd. (c); Cal. Rules of Court, rule 4.406(a) & (b)(5).)  Following resentencing, the court shall prepare amended abstracts of judgment and forward those to the appropriate authorities.  In all other respects, the judgment is affirmed.

MEEHAN, J.

I CONCUR:

DeSANTOS, J.

---

suggests that the trial court believed the imposed consecutive sentences were discretionary, it failed to state reasons to support the consecutive sentences it imposed in counts 9, 10 and 11.

32.

Poochigian, Acting P.J., Concurring and Dissenting.

I concur with the majority that sufficient evidence supports the gang enhancements (Pen. Code, § 186.22, subd. (b)(1)),[1] which the jury found true in counts 1 through 16. I also concur that the trial court did not abuse its discretion either in permitting introduction of appellant Bryson Clayton Mitchell's manslaughter conviction as a predicate offense or in permitting introduction of his jail assault, and any presumed error was harmless. Finally, I concur that the firearm enhancement (§ 12022.5, subd. (a)) in count 18 must be stricken and appellant must be resentenced. However, I respectfully dissent from the majority regarding appellant's constitutional challenge to some of the fines and fees imposed against him.

At sentencing, the trial court ordered appellant to pay (in part) the following:

(1) A minimum $300 restitution fine (§ 1202.4, subd. (b)(1));

(2) A $300 parole revocation fine (§ 1202.45.);

(3) An $840 aggregate court operations assessment (§ 1465.8, subd. (a)(1)); and

(4) A $630 aggregate criminal conviction assessment (Gov. Code, § 7373, subd. (a)(1)).

According to the majority, appellant's claim pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) is moot because we are remanding this matter under the full sentencing rule. (Maj. opn., *ante*, at p. 2, fn. 2.) I disagree that this constitutional challenge is moot. I would hold that appellant does not establish a constitutional violation based on *Dueñas*, and any presumed constitutional error was harmless.[2]

Much has already been written about *Dueñas*, both from this court and around the state. (See *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1052–1053; *People v. Aviles*

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

[2] The parties disagree whether appellant has forfeited his *Dueñas* claim by failing to object to the imposed fines and fees in the trial court, or whether ineffective assistance of counsel occurred. I would not address forfeiture. Appellant's claim fails on the merits and any presumed error was harmless beyond a reasonable doubt.

(2019) 39 Cal.App.5th 1055, 1063–1065.) I would not expand *Dueñas*'s holding beyond the unique facts found in *Dueñas*. Unlike the probationer in *Dueñas*, appellant does not establish the violation of a fundamental liberty interest. Appellant's incarceration was not a consequence of prior criminal assessments and fines. He was not deprived of liberty because of his alleged indigency. He was not caught in a cycle of "cascading consequences" stemming from "a series of criminal proceedings driven by, and contributing to, [his] poverty." (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1163–1164.)

*Dueñas* is distinguishable. Appellant could have avoided the present convictions regardless of his financial circumstances. Thus, it was not fundamentally unfair for the trial court to impose the restitution fine and the assessments in this matter without first determining appellant's ability to pay. I would reject appellant's due process challenge and the applicability of *Dueñas* in this matter.[3]

Moreover, even if *Dueñas* were applicable, prejudice did not occur. Unlike the *Dueñas* defendant who was placed on probation and subjected to a recurring cycle of debt, appellant was sentenced to an aggregate prison term well over 100 years. Nothing in this record reasonably suggests that he might be unable to work, or he might be ineligible for prison work assignments. As such, an inference exists that appellant will have the opportunity to earn prison wages and he can start paying his financial obligations. (See *People v. Lowery*, *supra*, 43 Cal.App.5th at p. 1060; *People v. Aviles, supra,* 39 Cal.App.5th at p. 1076; *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837 [ability to pay includes a defendant's prison wages].) Although it may take him time, he

---

**3** Unlike appellant, the *Dueñas* defendant presented compelling evidence that the imposed assessments resulted in ongoing *unintended* punitive consequences. The *Dueñas* court determined that those unintended consequences were "fundamentally unfair" for an indigent defendant under principles of due process. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1168.) The *Dueñas* court noted the imposed financial obligations were also potentially unconstitutional under the excessive fines clause of the Eighth Amendment. However, *Dueñas* stated "[t]he due process and excessive fines analyses are sufficiently similar that the California Supreme Court has observed that '[i]t makes no difference whether we examine the issue as an excessive fine or a violation of due process.' [Citation.]" (*Dueñas*, *supra*, at p. 1171, fn. 8.)

can make payments from either prison wages or monetary gifts from family and friends. Thus, any presumed constitutional error is harmless beyond a reasonable doubt.  (See *Chapman v. California* (1967) 386 U.S. 18, 24.)  Therefore, I would hold that *Dueñas* is inapplicable when this matter is remanded for resentencing.


POOCHIGIAN, Acting P.J.

3